# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| MICHAEL HAMPTON and TONI TAYLOR, | ) ) ) | |
| Plaintiffs, | ) ) | NO. 3:24-cv-00863 |
| v. | ) ) | JUDGE CAMPBELL |
| THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## <u>MEMORANDUM and ORDER</u>

Pending before the Court is Defendant Webb's motion to dismiss (Doc. No. 97), which is fully briefed. (*See* Doc. Nos. 103, 106). For the reasons stated herein, the motion is **GRANTED**.

## BACKGROUND[1]

In early 2014, two of Plaintiff Michael Hampton's companies, Autumn Assisted Living Partners, Inc. ("Autumn") and Vision Real Estate Investment Corporation ("Vision"), contracted with Defendants Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") and the Hospital Authority of Metro ("Hospital Authority") to purchase certain health care facilities and develop the surrounding real property owned and operated by Metro and the Hospital Authority (hereinafter the "Contracts"). Autumn was to operate and eventually purchase an assisted care living facility known as Knowles (hereinafter the "Facility"), and Vision was to purchase and develop the surrounding land. Autumn operated the Facility from July 1, 2014, through January 2017.

---

[1]     The facts stated herein come from Plaintiffs' Revised First Amended Complaint (Doc. No. 78).

Autumn reduced employee benefits when it assumed responsibility for the management of Facility, which upset one of the employees, Defendant Deborah Neal. In 2016, Neal fabricated rumors of deficient patient care at the Facility to the media and Metro Councilmen Shulman and Leonardo. In the Fall of 2016, former Metro Councilman Maynard spread the rumors started by Neal and propagated by Shulman and Leonardo that patient care at the Facility was deficient.

In January 2017, the Metro Legal Department and City Council terminated the Contracts. Also in January 2017, Metro Councilmen Shulman and Leonardo sent a letter to Metro's Chief Auditor, Defendant Mark Swann, requesting a "performance and financial audit" of Autumn's management of the Facility. Swann performed the requested audit and reported his findings to the Budget and Finance committee of the Metro Council on August 14, 2017.

During this presentation, Swann discussed his office's investigation and review of "resident trust funds," asserting that Autumn was required by law to establish, segregate, and maintain an account for certain resident funds separate from other funds received to operate the Facility. Swann told the committee that "we did refer the report to the district attorney's office because of the resident trust fund and the fact that we did have government moneys commingled with the supplements from the Hospital Authority." Swann further informed the committee: "Well, I'm not an expert in assisted – again, there's more regulations on nursing home trust funds. There's (sic) very few regulations related, if none, related to assisted living."

Shortly thereafter, in August 2017, Defendant District Attorney Glenn Funk authorized an investigator employed by his office, James (Benny) Goodman, to begin an investigation into Plaintiff Hampton and the operation and management of the Facility.

In September 2017, Swann issued a "Revised Audit" of Autumn's operation of the Facility, which acknowledged that: (1) none of the residents paid the full cost of their care; (2)

2

the residents received adequate care; and (3) Autumn had saved Metro millions of dollars during the 31 months it managed the Facility. The Revised Audit also criticized the lack of recognized financial accounting procedures but cited no legal basis for Swann's assertion that Plaintiff Hampton was legally required to establish, segregate, maintain or otherwise account for certain resident funds separate from other funds received to operate the Facility. A letter from the director of the Hospital Authority, Defendant Joseph Webb, accepting and adopting the findings (Doc. No. 78-7), was attached to the Revised Audit.

In October 2017, General Funk requested that the Tennessee Bureau of Investigation ("TBI") begin an investigation of Plaintiff Hampton's management of the Facility. From October 2017 through March 2018, Investigator Goodman and TBI Agent Sells conducted interviews of various persons involved in management of the Facility, the selection of Plaintiff Hampton's companies as the purchaser and developer of the Facility and adjacent real property, and the accounting for the "resident funds."

In April 2018, General Funk assigned Assistant District Attorney Jackson to manage the investigation and prosecution of Plaintiff Hampton. On April 18, 2018, Investigator Goodman requested assistance from the Metro Department of Audit in conducting an audit and review of the resident trust accounts for the Facility while under the ownership and control of Plaintiff Hampton. Thereafter, Swann appointed one of his new auditors, Defendant Laura Henry, to conduct an audit of the "resident trust funds" as requested by Investigator Goodman. From that point on, Henry was the primary contact from the Metro Department of Audit with the District Attorneys' Office regarding the financial operations of Plaintiff Hampton and the Facility.

During the summer of 2018, Assistant District Attorney Jackson directed Henry to prepare a spreadsheet that purported to account for the "resident trust funds" of alleged residents of the

Facility during the period of its management by Autumn, July 2014 through January 2017. Upon Plaintiffs' information and belief, Henry's spreadsheet relied on false information provided by Neal and incomplete documentation from the prior manager's operation of the Facility.

On or about December 14, 2018, Assistant District Attorney Jackson presented the fabricated spreadsheet and inapplicable documentation to the Davidson County Grand Jury to obtain a 46-count Indictment against Plaintiff Hampton. Two years later, on December 8, 2020, Plaintiff Hampton's wife, Plaintiff Toni Taylor, was arrested pursuant to an Indictment issued by the Davidson County Grand Jury for theft of property, $2,500 to $10,000, a Class D Felony, in connection with a transfer of funds that included resident trust fund money.

In June 2022, Plaintiff Hampton moved to dismiss the indictment against him as legally and factually baseless, and on July 28, 2023, the Davidson County Criminal Court dismissed the indictment against Hampton. Approximately two weeks later, on or about August 10, 2023, the State dismissed its case against Plaintiff Taylor on the basis that there was no probable cause for having issued the indictment against her.

Plaintiffs filed the present lawsuit on July 16, 2024, claiming Defendants maliciously prosecuted them and engaged in a civil conspiracy to maliciously prosecute them, in violation of state and federal law. (*See* Doc. No. 1; Revised First Amended Complaint, Doc. No. 78).

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial

plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

**ANALYSIS**

Plaintiffs Hampton and Taylor each bring state law claims against Webb for malicious prosecution and claims under 42 U.S.C. § 1983 for allegedly engaging in a civil conspiracy to maliciously prosecute them, in violation of their Fourth Amendment rights.[2] Webb claims he is entitled to qualified immunity.

"Qualified immunity protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hester v. Chester Cnty., Tennessee*, 162 F.4th 780, 784–85 (6th Cir. 2025) (citation modified). To overcome a claim of qualified immunity, the plaintiff must show that (1) Defendant violated a federal statutory or constitutional right, and (2) the unlawfulness of Defendant's conduct was clearly established at the time. *See id*. The Court may consider these requirements in the order of its choosing, and if one is lacking, the Court need not address the other. *See id*.

---

[2]      In their response, Plaintiffs abandoned or otherwise disavowed any other claims or causes of action. (Doc. No. 103 at 1-2).

Webb argues the First Revised Amended Complaint fails to allege a constitutional violation because it fails to allege facts that he played a role in the decision to prosecute Plaintiffs. (*See* Doc. No. 97 at 15).[3] To plausibly allege that Webb violated their Fourth Amendment rights via malicious prosecution, Plaintiffs must allege facts that he made, influenced, or participated in the decision to prosecute. *See Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015). And while actual malice is not required for a malicious prosecution claim, mere negligence will not create liability. *See id*. at 654–55. Plaintiffs respond by pointing to paragraph 33 of the Revised First Amended Complaint, which states as follows:

> Attached to the Revised Audit was a letter from Defendant Webb, the director of the Authority, accepting and adopting the findings set out in the audit. Webb's "stamp of approval" of the audit made him and the Authority complicit in the findings and lack of research regarding the claims made against Hampton/Autumn contained therein. (See Exhibit 7). Webb publicly accepted the findings of the Revised Audit even though the Authority had been stripped of all supervisory authority via Metro Ordinance BL2014-688 in March 2014. Defendant Metro also accepted the Revised Audit and became complicit in Swann's work. (See Exhibit 8).

(First Revised Amended Complaint, Doc. No. 78 ¶ 33).

However, these allegations, even accepted as true, do not set forth sufficient facts to even infer that Defendant Webb made, influenced, or participated in the decision to prosecute Plaintiffs. Accordingly, Plaintiffs have failed to meet their burden of establishing that Webb is not entitled to qualified immunity as their claims against him under Section 1983.

### CONCLUSION

For the reasons stated herein, Webb's motion to dismiss is under Section 1983 **GRANTED** as to Plaintiffs' claims against him under Section 1983 on qualified immunity

---

[3]   Webb further argues it was not clearly established at the time of his allegedly tortious conduct that an individual who was not a law enforcement officer could be liable for malicious prosecution. (*See id*.).

6

grounds. There being no remaining claims against Webb arising under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Webb for malicious prosecution. *See* 28 U.S.C. § 1367(c)(3); *Osborn v. Haley*, 549 U.S. 225, 245 (2007).

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE